**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: JON S. WILSON,
Debtor.

COOK GROUP, INCORPORATED;
WILSON-COOK MEDICAL,
INCORPORATED; COOK, INC.; VANCE
PRODUCTS, INCORPORATED; SABIN          No. 97-1924
CORPORATION,
Plaintiffs-Appellants,

v.

JON S. WILSON; WILTEK MEDICAL,
INCORPORATED,
Defendants-Appellees.

In Re: JON S. WILSON,
Debtor.

COOK GROUP, INCORPORATED;
WILSON-COOK MEDICAL,
INCORPORATED; COOK, INC.; VANCE
PRODUCTS, INCORPORATED; SABIN          No. 97-1983
CORPORATION,
Plaintiffs-Appellees,

v.

JON S. WILSON; WILTEK MEDICAL,
INCORPORATED,
Defendants-Appellants.

Appeals from the United States District Court
for the Middle District of North Carolina, at Greensboro.
N. Carlton Tilley, Jr., District Judge.
(CA-96-657-2, AP-94-6010W, BK-93-50034C-11W)

COOK GROUP, INCORPORATED;
WILSON-COOK MEDICAL,
INCORPORATED; COOK, INC.; VANCE
PRODUCTS, INCORPORATED; SABIN
CORPORATION,

No. 98-1315

Plaintiffs-Appellants,

v.

JON S. WILSON; WILTEK MEDICAL,
INCORPORATED,
Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
N. Carlton Tilley, Jr., District Judge.
(MISC-98-1)

Argued: June 2, 1998

Decided: September 23, 1998

Before HAMILTON and WILLIAMS, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Aaron J. Kramer, SCHIFF, HARDIN & WAITE, Chi-
cago, Illinois, for Appellants. James Robert Fox, Alan Meredith

2

Ruley, BELL, DAVIS & PITT, P.A., Winston-Salem, North Carolina, for Appellees. **ON BRIEF:** Linda K. Stevens, Ronald Wilder, SCHIFF, HARDIN & WAITE, Chicago, Illinois; Jeffrey E. Oleynik, Jim W. Phillips, Jr., BROOKS, PIERCE, MCLENDON, HUM-PHREY & LEONARD, Greensboro, North Carolina; William B. Sullivan, WOMBLE, CARLYLE, SANDRIDGE & RICE, Winston-Salem, North Carolina, for Appellants. Charles M. Ivey, III, IVEY, MCCLELLAN, GATTON & TALCOTT, Greensboro, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This case involves two appeals and a cross-appeal from judgment entered by the bankruptcy court after a bench trial. Appellants Cook Group, Incorporated, Wilson-Cook Medical, Incorporated, Cook, Incorporated, Vance Products, Incorporated, and Sabin Corporation (collectively "Cook") are engaged in the manufacture and sale of medical devices. Cook brought numerous claims against defendants Jon Wilson ("Wilson") and Wiltek Medical, Incorporated ("Wiltek") to trial including twenty-seven trade secret claims, a breach of contract claim, claims for financial misappropriations and unfair business practices, and claims for trademark, trade dress, and copyright infringement. In the first appeal, Cook challenges the lower court's rejection of eleven of its claimed trade secrets, [1] the compensatory

_____

[1] As indicated, Cook brought twenty-seven trade secret claims to trial. Cook prevailed on only nine of the claims and appeals only eleven of the eighteen rejected claims. The eleven trade secrets at issue on appeal include:

trade secret no. 1 (glass molds);
trade secret no. 2 (balloon step forming);

3

damages award for the found trade secret violations, the lower court's denial of its request for attorney's fees and its rejection of Cook's breach of contract claim. Cook also challenges an order of the lower court allowing Cook only one post-judgment inspection of Wiltek's facilities. Defendants cross-appeal, challenging the punitive damages award for the found trade secret violations. In the second appeal, Cook challenges a ruling of the bankruptcy court modifying an existing protective order and allowing a third-party to inspect Wiltek's plant. We affirm.

I

In 1990, Wilson-Cook Medical, Inc. ("Wilson-Cook") sued Wiltek alleging, among other things, misappropriation of trade secrets. Subsequently, the case was consolidated with a lawsuit filed by Cook against Wilson, the founder of Wiltek and former president of Wilson-Cook, and an adversary proceeding filed in connection with Wilson's personal bankruptcy action.

The consolidated action was tried without a jury before the United States Bankruptcy Court for the Middle District of North Carolina. On May 22, 1995, the court issued a 194-page Memorandum Opinion, Findings of Fact and Conclusions of Law ("Memorandum"), rejecting eighteen of Cook's trade secret claims but finding in its favor on nine such claims. The court permanently enjoined defendants from using, licensing, marketing or otherwise displaying or disclosing any of the found trade secrets, awarded Cook compensatory damages of $183,341 and punitive damages of $300,000, but declined to award attorney's fees. Additionally, the court awarded Cook $90,664.38 on its claims for financial misappropriations and rejected Cook's claims for trademark, trade dress, and copyright infringement, unfair business practices, and breach of contract. The district court affirmed. In

_____

trade secret no. 4 (snarehead forming machine);
trade secret no. 9 (apparatus to abrade);
trade secret no. 10 (3M grinding disks);
trade secret no. 11 (hard-packed buffing wheel);
trade secret no. 12 (soft-packed buffing wheel);
trade secret no. 13 (polishing rouge);
trade secret no. 17 (swedging); and
trade secret nos. 19 & 20 (hot iron tapering).

4

the interim, Cook filed a motion with the bankruptcy court to amend its Memorandum and allow Cook to inspect Wiltek's facilities. On November 7, 1995, the bankruptcy court granted Cook's motion in part, allowing Cook the right to make one surprise inspection of Wiltek's facilities.

On October 17, 1997, pursuant to defendants' motion, the bankruptcy court modified an existing protective order, allowing third-party Ballard Medical Products to inspect Wiltek's plant and conduct due diligence in preparation for a possible purchase of Wiltek. The district court affirmed.

II

A

Cook contends that the bankruptcy court erred in rejecting trade secrets nos. 1-2, 4, 9-13, 17, and 19-20. "Although we review the [lower] court's determination that a trade secret does not exist for clear error, we independently review the [lower] court's conclusions of law and the court's application of the law to the facts." Comprehensive Technologies Int'l, Inc. v. Software Artisans, Inc., 3 F.3d 730, 736 (4th Cir. 1993) (citation omitted).

Under the North Carolina Trade Secrets Protection Act, a trade secret is

> business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

5

N.C. Gen. Stat. § 66-152(3) (1992). A trade secret's existence is not negated "merely because the information comprising the trade secret has also been developed, used, or owned independently by more than one person." Id. § 66-152. Under the statute, misappropriation means "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." Id. § 66-152(1). Finally, to establish a prima facie case, a misappropriation plaintiff must introduce "substantial evidence" that the defendant "[k]nows or should have known of the trade secret" and "[h]as had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner." Id. § 96-155. A defendant can rebut this showing with "substantial evidence" that he "acquired the information comprising the trade secret by independent development, reverse engineering, or it was obtained from another person with a right to disclose the trade secret." Id.

Having considered the record and the parties' briefs and oral arguments, we conclude that the bankruptcy court's decision rejecting trade secrets nos. 1-2, 4, 9-13, 17, and 19-20 was not clearly erroneous. We discuss in detail only Cook's challenge to the court's rejection of trade secret no. 17.

Trade secret no. 17 involved a process known as "swedging" for affixing metal bands on catheters. The bankruptcy court rejected this claimed trade secret, finding that the processes and equipment used by Cook and Wiltek for swedging "are plainly different even though they accomplish a similar result." (J.A. 691.) [2] Moreover, the court concluded, swedging equipment "is commercially available and commonly used in the gastroenterological medical device industry and elsewhere." (Id.)

Cook challenges this ruling, arguing that it claims a trade secret not in its swedging equipment but in the concept of swedging. The bankruptcy court found, however, and Cook does not dispute, that swedg-

_____

[2] Citations to "J.A." refer to the joint appendix in nos. 97-1924, 97-1983.

ing equipment is commercially available and commonly used in the medical device industry. (Id.) The bankruptcy court also found, and again Cook does not dispute, that Cook personnel had seen swedging machines at medical device shows. (Id. at 692.) Given the general availability of swedging equipment in the industry, it is difficult for Cook to argue that the very concept of swedging metal bands on catheters is a trade secret. Certainly the bankruptcy court's rejection of this contention was not clearly erroneous.

B

Cook challenges the bankruptcy court's compensatory damages award for the found trade secrets, arguing that the court arbitrarily awarded it only 10% of Wiltek's gross profits. Cook also contends that the court erred in failing to award damages for the January 1, 1994 to May 22, 1995 time period. We review the compensatory damages award under the clearly erroneous standard. See Bills v. Hodges, 628 F.2d 844, 846 (4th Cir. 1980).

The bankruptcy court rejected Cook's argument that it should recover all of Wiltek's gross profits since its inception, concluding instead that damages should be based on the profits defendants realized through their use of Cook's trade secrets. Considering "many factors," the bankruptcy court determined that Cook should be awarded 10% of Wiltek's gross profits. Among the factors expressly considered by the court were

> the nature of the trade secrets which were misappropriated, the type of products in the Wiltek product line as reflected in its catalogs as well as products not shown in the catalogs such as electrocautery probes, the type of products which Wiltek produced for [third parties] and the extent to which the trade secrets were utilized in manufacturing the various products produced and sold by Wiltek, recognizing that this varied from one medical device to another.

(J.A. 728.) The bankruptcy court's decision plainly was not an arbitrary one but one based on a careful consideration of relevant factors and was supported by the evidence. It was not therefore clearly erroneous.

7

Cook also contends that the bankruptcy court erred in failing to award it compensatory damages for the period between January 1, 1994 and May 22, 1995. According to Cook, defendants' misappropriation continued through May 22, 1995, the date of bankruptcy court's Memorandum.

In calculating compensatory damages, the bankruptcy court considered Wiltek's profits for the 1989-1993 period, noting that Cook failed to offer evidence regarding post-1993 profits. (Id. at 727.) On appeal, Cook argues that it was unable to present evidence regarding post-1993 profits because 1994 and 1995 financial data was not available at the time of trial in late 1994. Cook, however, had the burden of presenting evidence upon which a compensatory damages award could be based. Having failed to present any evidence regarding post-1993 profits at trial--whether by preliminary data or by estimates--it cannot now complain that the bankruptcy court erred in failing to award damages for misappropriation occurring after 1993.

C

In their cross-appeal, defendants challenge the bankruptcy court's punitive damages award. N.C. Gen. Stat. § 66-154(c) provides that a court may, in its discretion, award punitive damages where there is willful and malicious misappropriation. Here, the bankruptcy court concluded that defendants acted willfully, finding that they "knew that Jon Wilson had learned the processes and equipment constituting the trade secrets at [Cook] and . . . intended to take the steps involved in utilizing the trade secrets." (J.A. 734.) The court also found that defendants acted maliciously. Specifically, it found that after having been put on notice of Cook's claims to certain trade secrets, defendants continued using the trade secrets in derogation of Cook's rights. (Id. at 735.)

Defendants argue that the bankruptcy court's ruling "turns the burden of proof on its head," requiring them to stop using claimed trade secrets as soon as the items are alleged to be protected, even if the claims are not ultimately successful. (Br. of Appellees/Cross-Appellants at 27.) The bankruptcy court, however, recognized that where a defendant has reasonable grounds for disputing claimed trade secrets and acts in good faith in doing so, his continued use of the dis-

puted trade secrets during ensuing litigation will not be treated as a malicious misappropriation. (J.A. 735.) But, recognizing the principle, the court nevertheless determined that defendants' conduct precluded them from avoiding liability on this basis. With regard to trade secret no. 14 (glycerine forming), for example, the bankruptcy court found that defendants provided false information to Cook in order to conceal their use of this trade secret. (Id. at 735-36.) Although defendants challenge this factual finding, it has support in the record. (See, e.g., id. at 2581-86.) That the evidence may be viewed in another way does not compel reversal. See Anderson v. City of Bessemer, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

D

Cook contends that the bankruptcy court erred in denying its request for attorney's fees on its trade secrets claims. N.C. Gen. Stat. § 66-154(d) provides that where the defendant has engaged in willful and malicious appropriation, "the court may award reasonable attorneys' fees to the prevailing party."

Cook made no serious attempt to argue the attorney's fees issue in its opening brief. In fact, in the argument section of its 47-page opening brief, Cook devoted little more than two sentences to this issue within a subsection dealing not with attorney's fees but with the propriety of the compensatory damages award. Because Cook failed adequately to argue the attorney's fee issue, it might properly be considered waived. See Fed. R. App. P. 28; Welsh v. Derwinski, 14 F.3d 85, 86 n.5 (1st Cir. 1994) (per curiam) ("issues adverted to in a perfunctory manner and without developed argumentation are deemed waived on appeal").

In view of the ambiguities attending the issue, we decline to consider it waived, but addressing it on the merits, find no abuse of discretion in the bankruptcy court's refusal to award attorney's fees. Cook contends that having found willful and malicious appropriation the bankruptcy court was obligated to award fees. This, however, ignores the language of the statute which is not mandatory but permissive. See N.C. Gen. Stat. § 66-154(d) ("court may award . . . fees")

9

(emphasis added). The bankruptcy court declined to award fees after "consider[ing] all of the circumstances involved in this case." (J.A. 732.) Here, substantial exemplary damages were awarded. Also, while Cook brought twenty-seven trade secrets claims to trial, it succeeded on only nine. In these circumstances, the bankruptcy court did not abuse its discretion in denying Cook's request for attorney's fees.[3]

E

Cook challenges the bankruptcy court's November 7, 1995 order amending its Memorandum and allowing Cook only one surprise inspection of Wiltek's facilities. According to Cook, it is entitled to at least one surprise inspection per year for as long as its trade secrets last. Because Cook has presented no evidence or argument indicating an abuse of discretion, we reject this contention.

III

In the course of the litigation below, Cook attempted to assert a breach of contract claim based on a confidentiality agreement allegedly signed by Wilson while in Wilson-Cook's employ. The bankruptcy court rejected Cook's breach of contract claim on the ground that it had not been properly pleaded in Cook's federal complaint, in a related action in Indiana state court, nor in the adversary proceeding. The bankruptcy court further found that even if the claim had been pleaded, it failed on the merits.

Cook contends that its breach of contract claim was properly pleaded. Alternatively, Cook asserts that the bankruptcy court erred in denying its post-trial motion to amend its complaint to conform to the evidence presented at trial. Finally, Cook asserts that under Fed. R. Civ. P. 54(c), it was entitled to relief on the breach of contract claim irrespective of whether the claim was properly pleaded. We summarily reject Cook's latter contention and discuss only the first two.

_____

[3] In conjunction with the attorney's fees issue, we grant Cook's June 8, 1998 motion for leave to file a brief "to clarify non-waiver on attorneys' fee claim."

As indicated, the bankruptcy court concluded that Cook's breach of contract claim was not properly pleaded. Although Cook's complaints alleged a number of causes of action, none expressly pleads a breach of contract claim. That the confidentiality agreement was attached to at least one of the complaints and that the complaints mention the agreement is not enough to constitute "a short and plain statement" of the claim. Fed. R. Civ. P. 8(a). The bankruptcy court, therefore, did not err in concluding that the breach of contract claim was not properly pleaded.

Cook continues, arguing that the breach claim was tried by implied consent, noting that both parties submitted evidence regarding the validity of the confidentiality agreement. Even assuming such evidence was presented, it was relevant to issues already in the case, namely the trade secret claims. In such circumstances, the bankruptcy court did not abuse its discretion in determining that the issue was not tried by consent. See 6A Charles Alan Wright, et al., Federal Practice and Procedure § 1493, at 32, 41 (2d ed. 1990).

IV

In its second appeal, Cook contends that the bankruptcy court erred in allowing third-party Ballard to inspect Wiltek's facilities.

On September 16, 1997, Ballard prepared a letter of intent to purchase Wiltek. The letter indicated that the purchase was contingent upon a investigation and analysis of Wiltek and its products, assets, and liabilities. Upon receiving the letter of intent, defendants moved to modify a protective order, previously entered in the case, to allow Ballard to conduct the necessary due diligence inspection. Cook opposed the motion, arguing that if disclosure was made before their appeal of the eleven rejected trade secrets was final, their trade secrets would be lost even if they ultimately prevailed on appeal. The bankruptcy court granted defendants' motion.

"[F]or good cause shown," a court may enter a protective order requiring "that a trade secret . . . not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c)(7). A protective order entered pursuant to rule 26 is reviewed for abuse of discretion. See M & M Med. Supplies & Serv. Inc. v. Pleasant Valley Hosp., Inc., 981

11

F.2d 160, 163 (4th Cir. 1992) (en banc), cert. denied, 508 U.S. 972 (1993).

Our rejection of the eleven claimed trade secrets in the first appeal disposes of Cook's second appeal: since the eleven claimed trade secrets were properly found not to be trade secrets, they are not entitled to Rule 26(c)(7) protection.

V

For the reasons discussed above, the judgment of the district court is

AFFIRMED.

12